IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY GLENN WALKER | § | |
| (TDCJ No. 1539889), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:11-cv-1055-L-BN |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Anthony Glenn Walker's application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Dkt. No. 2] is again before the Court following remand from the United States Court of Appeals for the Fifth Circuit. *See* Dkt. No. 31. United States District Judge Sam A. Lindsay has referred this action to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) and an Order of Reference. *See* Dkt. No. 34. The undersigned issues the following findings of fact, conclusions of law, and recommendation.

**Background**

In 2008, a Dallas County jury convicted Petitioner on two counts of aggravated robbery with a deadly weapon and one count of possession of less than one gram of cocaine, and he was sentenced to 35 years' imprisonment for the aggravated robberies and two years' imprisonment for the drug offense. All three convictions were affirmed

on direct appeal. *See Walker v. State*, Nos. 05-08-01523-CR, 05-08-01524-CR, & 05-08-01525-CR, 2010 WL 311647 (Tex. App. – Dallas Jan. 28, 2010, no pet). Petitioner also filed three applications for state post-conviction relief – one for each conviction– and all were denied. *See Ex parte Walker*, WR-75, 625-01, WR-75, 625-02, & WR-75, 625-03, 2011 WL 1817625 (Tex. Crim. App. May 11, 2011).

Petitioner then filed his federal habeas application [Dkt. No. 2] on May 20, 2011, asserting that he received ineffective assistance of counsel at trial and on appeal [Grounds 1 and 2]; that his aggravated robbery convictions were the result of an unduly suggestive in-court and out-of-court identification procedure [Ground 3]; and that he was denied the right to counsel of his choice [Ground 4]. This Court entered judgment, denying Petitioner's application in its entirety and dismissing this action with prejudice, on March 15, 2013. *See* Dkt. Nos. 17, 24, & 25; *Walker v. Thaler*, No. 3:11-cv-1055-L-BD, 2012 WL 7749068 (N.D. Tex. May 9, 2012), *rec. adopted*, 2013 WL 1091238 (N.D. Tex. Mar. 15, 2013).

As to Petitioner's third ground, this Court concluded that it was procedurally barred from considering its merits since, "[o]n state collateral review, the Texas Court of Criminal Appeals denied post-conviction relief as to this ground because 'it could have been, but was not raised on direct appeal.'" 2012 WL 7749068, at *7 (quoting 2011 WL 1817625, at *1). That is, although Petitioner directly appealed his conviction to the intermediate state court of appeals, raising this ground, the third ground had not been fairly presented to the highest court of the state because Petitioner did not seek discretionary review in the Texas Court of Criminal Appeals after that court affirmed

his conviction. *See id.* at *7 & n.2.

Petitioner appealed. *See* Dkt. No. 26. And, as applicable to the third ground, the Fifth Circuit granted a certificate of appealability "on the sole of question of whether the *Gardner* rule is an adequate and independent state ground where a constitutional issue was raised on direct appeal but not in a petition for discretionary review." *Walker v. Stephens*, 583 F. App'x 402, 402-03 (5th Cir. 2014) (per curiam); *see Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1996).

On October 31, 2014, the Fifth Circuit reversed this Court's "order finding [Petitioner's] claim[ – that the trial court should have granted a motion to suppress his in-court and out-of-court identification by two robbery victims –] procedurally defaulted." *Walker*, 583 F. App'x at 404 (after first holding, "where a constitutional issue was raised on direct appeal but not in a petition for discretionary review, the *Gardner* rule was not adequate as of the date it was applied to Walker's state habeas petitions, May 11, 2011").

The only issue now before the Court on remand therefore is "to decide the merits of Walker's claim" that the trial court should have granted a motion to suppress his in-court and out-of-court identification by two robbery victims. *Id.* But, to place that issue in context, below are the facts of this case as summarized by the Texas Court of Appeals for the Fifth District:

> At approximately 10:30 p.m., Jose Zaragoza and Guadalupe Garcia were in the back parking lot of the Dolphin Club looking at a truck Garcia had recently purchased when they were approached by a man with a shotgun. The man held the gun to Zaragoza's and Garcia's heads and demanded their wallets. Both Garcia and Zaragoza agreed the robbery lasted at

least two and one-half minutes. Although the robber made Zaragoza and Garcia lie down on the ground, Zaragoza estimated he was face-to-face with the robber for thirty to forty seconds. Zaragoza testified he was only one foot from the robber. Both Zaragoza and Garcia described the parking lot as well lit and testified they got a "good look" at the robber because he was screaming in their faces.

After obtaining Zaragoza's and Garcia's wallets, the robber ran to a waiting black car and got into the passenger side. The car traveled rapidly in reverse for approximately half a block and then hit two electrical poles. Zaragoza followed the car in his truck and saw two men run from the wrecked car.

Officer Tom Nguyen responded to a dispatch about the robbery. He estimated it took him about three minutes to arrive after receiving the call. Nguyen saw Walker running and stopped him. Nguyen then handcuffed Walker to ensure Nguyen's safety. While searching Walker for his identification, Nguyen found Zaragoza's and Garcia's wallets. Another officer brought Zaragoza and Garcia to the scene of the arrest to do a field identification. Nguyen testified he would not have brought Zaragoza and Garcia together to the identification because he had been trained to separate witnesses prior to an identification.

Although their estimation of the time that had elapsed since the robbery varied from ten minutes to one hour, Zaragoza and Garcia agreed they were taken together to the scene of the arrest. Zaragoza estimated the scene was one hundred to two hundred feet from the club while Garcia estimated he was taken about "one-half mile or two blocks." Both Zaragoza and Garcia identified Walker as the man who robbed them. Garcia testified that his identification of Walker was based on his observations during the robbery, he was one hundred percent sure Walker was the robber, and he would have recognized Walker without seeing him at the scene. Zaragoza testified the police officer never told them that they were being shown the person who robbed them; rather, the officer asked if Walker was the person who robbed them. Zaragoza recognized Walker "right away" as the man who robbed him.

Zaragoza and Garcia were taken back to the Dolphin Club. Nguyen subsequently took Walker to the Dolphin Club to finish the investigation. Walker was handcuffed in the back seat of Nguyen's patrol car while Nguyen provided information about the process to Zaragoza and Garcia. An unidentified police officer shone a light into Walker's face and asked if Zaragoza and Garcia recognized him. Zaragoza and Garcia again

identified Walker as the robber. Nguyen denied he was the officer who requesting the second identification of Walker at the Dolphin Club. In Nguyen's opinion, there was no need for a second identification because Walker had already been identified as the robber.

At trial, both Zaragoza and Garcia identified Walker as the robber. The jury found Walker guilty of the aggravated robbery of Zaragoza and Garcia and of possession of less than one gram of cocaine that was found on Walker at the time of his arrest.

*Walker*, 2010 WL 311647, at *1-*2.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in

- 6 -

state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no farther." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination

of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

## Analysis

Because the Dallas Court of Appeals issued "the last reasoned opinion" as to Petitioner's claim that the trial court should have granted a motion to suppress his in-court and out-of-court identification by two robbery victims, this Court must determine whether, through that decision, the Dallas Court of Appeals (1) unreasonably applied clearly established federal law or (2) unreasonably applied the facts in light of the evidence presented.

The Dallas Court of Appeals addressed the claim at issue as follows:

Walker moved to suppress Zaragoza's and Garcia's identification of him as the robber. In his first two points of error, Walker contends the trial court erred by denying the motion to suppress because the pretrial

identification procedure used by the police was impermissibly suggestive and violated his right to due process.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App.2007). The trial court is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *Id.* Therefore, we give almost total deference to the trial court's determination of historical facts, particularly when the trial court's findings are based on an evaluation of credibility and demeanor. *Id.*; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App.1997). We afford the same deference to mixed questions of law and fact if resolving those questions turns on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App.2007); *Guzman*, 955 S.W.2d at 89. We review *de novo* mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App.2008); *Guzman*, 955 S.W.2d at 87.

In reviewing a trial court's ruling on a suppression motion, we view the record in the light most favorable to the ruling. *Garcia-Cantu*, 253 S.W.3d at 241. We generally consider only evidence adduced at the suppression hearing. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App.2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.1996). However, when the parties later relitigate the suppression issue at the trial on the merits, we consider all evidence, from both the pretrial hearing and the trial, in our review of the trial court's ruling. *Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 809. Here, the trial court held a pretrial hearing on Walker's motion to suppress and denied the motion at the conclusion of the hearing. However, at trial both the prosecutor and defense counsel asked questions about Zaragoza's and Garcia's identification of Walker. Accordingly, we will consider relevant evidence from both the hearing on the motion to suppress and the trial in reviewing Walker's complaint on appeal.

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused of due process. *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App.2001); *Loserth v. State*, 963 S.W.2d 770, 771-72 (Tex. Crim. App.1998). We make two inquiries in determining whether the trial court was correct in admitting an in-court identification: (1) whether the police used an impermissibly suggestive pretrial identification procedure in obtaining the out-of-court identification, and (2) if so, whether, under

all the circumstances, there was a substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). The defendant has the burden to prove by clear and convincing evidence that the in-court identification is unreliable. *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App.1993).

Even if we assume the identification procedure used by the police at the scene was impermissibly suggestive, Walker did not meet his burden of showing it gave rise to a substantial likelihood of irreparable misidentification. In determining whether the identification was reliable despite the suggestive nature of the identification procedure, we consider the following non-exclusive factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App.1999). As historical facts, we view these factors in a light favorable to the trial court's ruling. *Ibarra*, 11 S.W.3d at 195. Viewed in this light, we then weigh them *de novo* against the corrupting effect of the suggestive pretrial identification procedure. *Id.* at 195-96. If, despite the suggestive pretrial identification procedure, the totality of the circumstances reveals no substantial likelihood of misidentification, the trial court does not err by admitting the testimony. *Id.* at 195.

The parking lot behind the Dolphin Club was well-lit, and Zaragoza and Garcia could see the robber's face. Both Zaragoza and Garcia testified the robber was "in their face," screaming at them. Zaragoza testified he was less than one foot from the robber. Further, Zaragoza and Garcia had ample time to observe Walker. The robbery lasted at least two and one-half minutes, and Zaragoza estimated he was face-to-face with the robber for thirty to forty seconds. *See Conner*, 67 S.W.3d at 200 (identification reliable when witnesses observed perpetrator for several seconds); *Williams v. State*, 243 S.W.3d 787, 790 (Tex. App. – Amarillo 2007, pet. ref'd) (identification reliable when victim observed burglar for less than three minutes); *Brown v. State*, 29 S.W.3d 251, 255 (Tex. App. – Houston [14th Dist.] 2000, no pet.) (identification reliable when victim observed burglar's face for less than sixty seconds). Both Zaragoza and Garcia identified Walker as the robber less than one hour after the robbery and were certain of their identification. Walker had Zaragoza's and Garcia's wallets in his possession.

Zaragoza and Garcia also identified Walker as the robber at trial. They testified the identification at trial was based solely on their observations during the robbery. Garcia testified he was one hundred percent certain Walker was the robber and did not need to see Walker at the scene in order to identify him.

Considering all the factors under the totality of the circumstances, we conclude the pretrial identification procedure did not create a substantial risk of irreparable misidentification so as to deny Walker due process. Therefore, the trial court did not err by denying Walker's motion to suppress. We overrule points of error one and two.

*Walker*, 2010 WL 311647, at *2-*4.

"As this claim was adjudicated in a state-court proceeding, it is evaluated under the 'difficult to meet' and highly deferential standard contained in 28 U.S.C. § 2254(d)[.]" *Burton v. Kelly*, 552 F. App'x 346, 347 (5th Cir. Jan. 15, 2014) (per curiam) (quoting *Harrington*, 131 S. Ct. at 786-87). And the findings of the Dallas Court of Appeals "are presumed correct and may be rebutted only by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

As the Fifth Circuit noted in *Burton*,

[t]he Due Process Clause protects accused individuals from the use of evidence against them derived from unreliable identifications resulting from impermissibly suggestive procedures. *Biggers*, 409 U.S. at 198-99, 93 S.Ct. 375. The admissibility of identification evidence is governed by a two-step analysis. *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990). First, the court must determine whether the identification procedure was impermissibly suggestive. *See id.* If the court determines that the procedure was impermissibly suggestive, the court must next determine whether, under the totality of the circumstances, the procedure posed a "substantial likelihood of irreparable misidentification." *Id.* The Supreme Court has set out factors to be considered in determining the likelihood of misidentification. *Biggers*, 409 U.S. at 199-200, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal, the witness's degree of attention during the offense, the accuracy of the witness's prior description of the assailant, the level of certainty demonstrated at the

- 11 -

confrontation, and the length of time between the crime and the confrontation. *Id.*

*Id.*

The analysis of Dallas Court of Appeals excerpted above reveals that that court skipped to the second step of the same analysis – and then considered substantially the same factors – set out by the Fifth Circuit in *Burton. Compare id.*, *with Walker*, 2010 WL 311647, at \*3-\*4. From this Court's view of the *Biggers* factors, based on the totality of the circumstances, Petitioner has not shown that the Dallas Court of Appeals's determination – that the pretrial identification procedure did not give rise to a substantial likelihood of irreparable misidentification – was incorrect, much less that the Dallas Court of Appeals's determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Burton*, 552 F. App'x at 348 (quoting *Harrington*, 131 S. Ct. at 786-87).

Accordingly, Petitioner has failed to establish that, in denying his identification claim (Ground Three in his federal habeas application), the state court unreasonably applied clearly established federal law or the denial resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 10, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE